# EXHIBIT 5

# EXHIBIT 5

1  Rosary A. Hernandez, Esq. SBN 020182
   Elisabeth E. Martini, Esq. SBN 030801
2
   **TB** TIFFANY & BOSCO
3              P.A.
   SEVENTH FLOOR CAMELBACK ESPLANADE II
4  2525 EAST CAMELBACK ROAD
   PHOENIX, ARIZONA 85016-4237
5  TELEPHONE: (602) 255-6000
   FACSIMILE:  (602) 255-0103
6  E-Mail: rah@tblaw.com
           eem@tblaw.com
7
   *Attorneys for Plaintiffs*

COPY
FEB 02 2018
MICHAEL K. JEANES, CLERK
K. NORTON
DEPUTY CLERK

CV2018-001736

IN THE SUPERIOR COURT OF ARIZONA

COUNTY OF MARICOPA

| | |
|---|---|
| ADAMS CRAIG ACQUISITIONS, LLC, an Arizona limited liability company; ADAMS CRAIG TECHNOLOGY, LLC, a Nevada limited liability company,<br><br>Plaintiffs,<br><br>vs.<br><br>ATAIN SPECIALTY INSURANCE COMPANY, a Texas Corporation; DYNAMIC CLAIMS SERVICES, INC., a California Corporation, and DOES 1-100;<br><br>Defendant. | Case No._____<br><br>**COMPLAINT**<br><br>1. **Breach of Contract**<br>2. **Breach of Covenant of Good Faith and Fair Dealing**<br>3. **Promissory Estoppel**<br>4. **Negligent Misrepresentation**<br>5. **Aiding and Abetting** |

Plaintiffs ADAMS CRAIG ACQUISITIONS, LLC, and ADAMS CRAIG TECHNOLOGY, LLC, (collectively "Plaintiffs"), by and through their attorneys, Tiffany & Bosco, P.A., hereby respectfully submit their Complaint against Defendants ATAIN SPECIALTY INSURANCE COMPANY ("Atain") and DYNAMIC CLAIMS SERVICES, INC. ("Dynamic") and allege as follows:

///

///

///

**PARTIES, JURISDICTION, AND VENUE**

1. Adams Craig Acquisitions, LLC was at all times material hereto an Arizona Limited Liability Company authorized to do business and was doing business in the County of Maricopa, State of Arizona.

2. Adams Craig Technology, LLC was at all times material hereto a Nevada Limited Liability Company authorized to do business and was doing business within the County of Maricopa, State of Arizona.

3. Upon information and belief, Defendant Atain Specialty Insurance Company ("Atain"), is a Texas corporation, headquartered in Michigan. At all material times hereto, Atain is authorized to, and was, writing insurance policies within the County of Maricopa, State of Arizona.

4. Upon information and belief, Defendant Dynamic Claims Services, Inc. is a California corporation. At all material times, hereto, Dynamic is authorized to do, and was doing business within the County of Maricopa, State of Arizona.

5. Jurisdiction and venue are appropriate in this Court pursuant to A.R.S. § 12-123, 12-401(5), (7), and (18).

**GENERAL ALLEGATIONS**

6. On March 12, 2014, Plaintiffs entered into a construction contract with David and Tommie Sullivan (the "Sullivans") for remodeling work to be performed at their residence located at 7029 North 57th Place, Paradise Valley, Arizona (the "Project").

7. Plaintiffs thereafter entered into a subcontract with JLC Roofing, Inc. (JLC) for roofing work to be completed at the Project.

8. On or around August 10, 2016, Plaintiffs received notification from the Sullivans of roof leak(s) in their second car garage.

///

///

9. On or around August 16, 2016, a meeting with Plaintiffs and JLC was held at the residence to inspect the leak(s), outline potential sources of the leak(s), and determine necessary repairs.

10. From August 16, 2016 through November 3, 2017, Plaintiffs contacted various experts and subcontractors to assist in sourcing the leak, but Plaintiffs' efforts were hindered by infrequent rains and internal, man-made efforts to duplicate leaks did not produce water intrusion.

11. Following frequent, heavy rain the first two (2) weeks of November 2016, Plaintiffs noticed the leak became more prevalent and notified JLC, among other trades, that barring any new information, Plaintiffs would be removing all roof decks and would require any/all potential associated trades (collectively "PATs") responsible for "drying-in" the home to participate in the repair.

12. Other trades including, MWS Construction as Siding Installer, AZCal as Stucco Installer, and Primera Interiors as Decking Installer, agreed to participate in the repair.

13. JLC, however, advised Plaintiffs that it was taking the position that the deck was abused by other trades and any redo of the waterproofing would not be considered a warranty issue.

14. On or around November 14, 2016, Primera Interiors hired their own 3rd Party inspector to use infrared thermography technology to trace the leak to the "roof caps" installed by the roofer.

15. On or around November 15, 2016, Plaintiffs contacted the principal of JLC to notify him of Primera Interior's experts' findings.

16. JLC did not respond to Plaintiffs' phone calls requesting that warranty work be completed.

-3-

17. Plaintiffs were forced to engage the Registrar of Contractors ("ROC") to get JLC to respond.

18. On or around January 5, 2017, the ROC found that JLC's work was implicated and required JLC to perform repair work on the roof.

19. Following the ROC finding, on or around January 18, 2017, JLC returned to the site to repair/replace the roof caps, however, it refused to perform the full extent of repairs agreed to and required by the ROC.

20. Thereafter, JLC further refused to cooperate, removed the roof caps and left the home further exposed to damages overnight.

21. Plaintiffs were forced to attempt to mitigate the water damage to the Sullivans and incurred certain costs to do so.

22. Plaintiffs attempted to present a claim against JLC's insurance companies; Knight Specialty, Nationwide Mutual Insurance and CopperPoint Mutual Insurance.

23. Plaintiffs also contacted JLC's bonding company, Developers Surety & Indemnity.

24. Plaintiffs received no response from either JLC's insurers or bonding company.

25. Plaintiffs were finally forced to contact their own insurer, Atain, through their broker on or around February 23, 2017.

26. The claim was assigned to Ms. Victoria Gursky ("Gursky"), an employee of Atain.

27. At all material times hereto, Gursky was operating as an agent for her employer, Atain.

28. Gursky directed Plaintiffs not to have any further contact with JLC insurers or bonding company.

29. Gursky retained a third-party adjusting company, Defendant Dynamic, to visit the site prior to repairs being made and to prepare a report for use in adjusting the damage caused by JLC's work.

30. Defendant Dynamic assigned Marvin Heinl ("Heinl") to adjust the loss with Plaintiffs.

31. At all relevant times hereto, Heinl was acting as an agent of Defendant dynamic.

32. At Gursky's and Heinl's request, Plaintiffs provided information and documentation to support the claim and the mitigation/repair protocol.

33. At one point, Plaintiffs spent multiple hours over the span of several days with Heinl to discuss various documentation, contractual information and investigation of the leaks at the Project.

34. Prior to any repairs being made, additional destructive testing was performed, which Heinl observed.

35. Plaintiffs also provided Heinl with a proposed budget for the repairs totaling $135,632.

36. Following the destructive testing, Plaintiffs asked Heinl whether any additional information was needed prior to commencing repairs and mitigating potential damages.

37. Heinl indicated that Dynamic had everything it needed, and indicated Plaintiffs should proceed with the repairs as they had a "duty to mitigate damages."

38. Plaintiffs provided notice to Atain that they would undertake repair work and in March 2017, performed the necessary repair work.

39. The repairs were completed for $120,008.37, a saving of $15,633.33 from the original budget presented to Heinl.

40. For the first time, Atain provided Plaintiffs with a reservation of rights letter on April 4, 2017 and requested additional information.

41. Plaintiffs provided the requested additional information to Atain including participating in two conference calls with Gursky.

42. At Atain's request, Plaintiffs subsequently provided additional clarifying documentation and facts to Atain through several letters, including in July 2017.

43. On or about October 11, 2017, Gursky issued correspondence indicating that Atain would issue payment for $27,363.97 stating that the remaining $92,644,40 of the $120,008.37 requested, was "not covered" but provided no reasons for the purported lack of coverage.

44. Gursky and Atain's correspondence attempts to insinuate that Plaintiffs did not timely notify Atain of the loss or provide them with an opportunity to inspect.

45. Plaintiffs, however, did provide Atain, through their third-party adjuster Dynamic and Heinl, an opportunity to be present at destructive testing in order to prepare a subsequent report.

46. Despite multiple requests that Dynamic's report be provided to Plaintiffs, the report has still not been made available to Plaintiffs.

47. Plaintiffs' policy with Atain provided coverage for damages incurred as a result of certain "bodily injury" or "property damage".

48. The allegations by the Sullivans and the resulting property damage caused by water intrusion due to JLC's faulty work, and facts developed subsequent thereto, were sufficient to trigger coverage under the Atain Policy.

49. In the alternative, Atain waived a plain reading of the Policy when it directed Plaintiffs to undertake repair work and mitigate the damages.

50. Due to Atain's failure to reimburse Plaintiffs for costs and fees incurred in repairing the damages to the Project, Plaintiffs have been forced to initiate both the

1  instant litigation and another lawsuit against its subcontractors ("Subcontractor
2  Litigation") whose work was implicated.

3      51. Both the instant litigation and the Subcontractor Litigation are causing
4  Plaintiffs on-going damages as a result of Atain's and Dynamic's actions and/or
5  inactions.

## FIRST CLAIM FOR RELIEF

### (Breach of Contract)

### Against Atain Specialty Insurance Company

9      52. Plaintiffs incorporate herein all averments set forth in the paragraphs above.

10     53. Plaintiffs are named insureds under the Atain Policy.

11     54. Under the Atain Policy, Atain had an obligation and duty to defend
12  Plaintiffs from litigation filed by the Sullivans and further, to protect Plaintiffs from
13  incurring unnecessary litigation costs.

14     55. Under the Atain Policy, Atain has an obligation and duty to indemnify and
15  fund 100% of the costs incurred by Plaintiffs arising out of JLC's work.

16     56. Despite Plaintiffs' demands, Atain has failed and refused to reimburse
17  Plaintiffs' costs and fees incurred as a result of JLC's work.

18     57. Atain has failed and refused to reimburse Plaintiffs' costs and fees despite
19  requiring Plaintiffs to mitigate their damages.

20     58. Atain has failed and refused to reimburse Plaintiffs' costs and fees despite
21  directing Plaintiffs not to communicate with JLC's insurers and bonding company in an
22  effort to procure reimbursement from other potential sources.

23     59. As the direct and proximate result of Atain's failure under the Policy to
24  honor its obligations, Plaintiffs have been damaged in an amount to be determined at
25  trial.

60. This claim arises out of contract, such that Plaintiffs, upon prevailing, will be entitled to recover their reasonable attorneys' fees and costs incurred herein, pursuant to A.R.S. §§ 12-341 and 12-341.01.

## SECOND CLAIM FOR RELIEF

### (Breach of Covenant of Good Faith and Fair Dealing)

### Against Atain Specialty Insurance Company

61. Plaintiffs incorporate herein all averments set forth in the paragraphs above.

62. It is inherent in each and every contract, including insurance, that there is an implied duty of good faith and fair dealing.

63. Atain's subsequent knowing, intentional and deliberate acknowledgment of coverage under the Policy, but denial of payment, is unreasonable.

64. Atain has knowingly or recklessly denied full payment of Plaintiffs' costs and fees with respect to damages caused by JLC's work.

65. Through the direct and proximate result of Atain's actions and refusal to pay based on its investigation, representations, and statements, Atain has independently breached the duty of good faith and fair dealing. The breach of the duty of good faith and fair dealing occurred, including but not limited to the following conduct:

    a. Failure to treat the insured with equal consideration;

    b. Failure to timely, promptly and reasonably investigate the coverage loss;

    c. Failing to promptly and effectively communicate with Plaintiffs all of the possible coverages that might apply to the covered loss and that would inure to Plaintiffs benefit, ignoring the industry standard to disclose all coverages;

    d. Intentionally misinterpreting its own insurance policies in order to deny or delay coverage to Plaintiffs;

  e. Manipulating or misrepresenting facts, such as scope of coverage, whether the alleged damages were occurrences triggering coverage under specific policies, in order to support denial of coverage;

  f. Failing to meaningfully participate and/or pay for Plaintiffs' attempts to mitigate damages by making necessary repairs;

  g. Directing Plaintiffs not to communicate with other possible sources of recovery for damages, namely JLC's insurers and bonding company;

  h. Causing Plaintiffs to incur additional fees and costs in prosecuting the instant litigation and Subcontractor Litigation.

  i. Plaintiffs may also discover more facts during the litigation that further support this claim for the breach of the covenant of good faith and fair dealing.

66. As a direct and proximate result of Atain's conduct in breaching the duty of good faith and fair dealing, Plaintiffs have been damaged in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF

#### (Promissory Estoppel)

#### All Defendants

67. Plaintiffs incorporate herein all averments set forth in the paragraphs above.

68. Plaintiffs reasonably relied on the statements and actions of Atain and Dynamic in incurring costs relating to repairing damage to the Project.

69. Atain and Dynamic, knew or had reason to know, that Plaintiffs would rely on the statements, actions and investigation of each Defendant and that Plaintiffs would incur certain costs associated with the reliance.

70. Despite that knowledge, Atain and Dynamic unreasonably failed to warn Plaintiffs that the large majority of costs incurred would not be covered.

71. Atain and Dynamic knew or should have known that directing Plaintiffs not to communicate with JLC's insurers and bonding company would cause Plaintiffs to suffer additional harm.

72. Plaintiffs have been detrimentally affected by the actions and inactions of Atain and Dynamic in adjusting the claim.

73. Plaintiffs have suffered, and continue to, suffer harm in the form of unpaid expenses, fees and costs, attorneys' fees and costs and other damages as a direct and proximate result of Atain and Dynamic's actions and inactions. Plaintiffs' damages are in an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF

### (Negligent Misrepresentation)

### All Defendants

74. Plaintiffs incorporate herein all averments set forth in the paragraphs above.

75. Atain and Dynamic each owed a duty to Plaintiffs in investigating and adjusting the claim for reimbursement of costs associated with remediation and repair work at the Project.

76. Atain and Dynamic breached their duty to Plaintiffs by failing to reasonably and timely investigate, communicate and pay Plaintiffs claim for reimbursement and by failing to disclose all relevant Policy provisions that could affect coverage for Plaintiffs' damages.

77. Plaintiffs reasonably and foreseeably relied on Atain's and Dynamic's statements, actions and representations.

78. Plaintiffs have suffered, and continue to, suffer harm in the form of unpaid expenses, attorneys' fees and costs and other damages as a direct and proximate result of Atain and Dynamic's breach. Plaintiffs' damages are in an amount to be determined at trial.

## FIFTH CLAIM FOR RELIEF

### (Aiding and Abetting)

### Dynamic Claims Services

79. Plaintiffs incorporate herein all averments set forth in the paragraphs above.

80. Dynamic knew or should have known that by wrongfully denying coverage of the full amount Plaintiffs spent on remediation, Atain was acting inconsistently with the terms of its Policy, its prior directives, and common law.

81. Further, Dynamic knew or should have known that Atain's wrongful actions would harm Plaintiffs harmed by the breach.

82. Dynamic encouraged, counseled, advised and/or assisted Atain in their wrongful denial of Policy benefits to Plaintiffs.

83. As a direct and proximate cause of Dynamic's actions in assisting Atain to wrongfully deny benefits under the Policy, Plaintiffs have been harmed in an amount to be determined at trial.

**WHEREFORE**, Plaintiffs pray for judgment against Atain and Dynamic as follows:

(a) For an adjudication that Atain breached the contract of insurance by failing to pay for damages covered by the clear terms of the Policy;

(b) For an adjudication that Atain and Dynamic breached the duty of good faith and fair dealing in adjusting Plaintiffs' claim;

(c) For an adjudication that Atain and Dynamic are estopped from denying coverage under the Policy;

(d) For an adjudication that Atain and Dynamic breached their duty to Plaintiffs and misrepresented the available coverage under the Policy;

(e) For an adjudication that Dynamic aided and abetted Atain in wrongfully denying Policy benefits;

-11-

(f) Awarding judgment in Plaintiffs' favor and against Atain and Dynamic, jointly and severally, in an amount to be determined at trial, including fees and costs incurred by Plaintiffs, and as the result of the unlawful acts pled above, plus prejudgment interest and attorney fees as permitted by law, including but not limited to A.R.S. §§12-341, 12-341.01;

(g) General and Punitive damages; and

(i) For such further and additional relief as the Court deems necessary and/or proper.

RESPECTFULLY SUBMITTED this 2nd day of February, 2018.

**TIFFANY & BOSCO, P.A.**

By: *[signature]*
Rosary A. Hernandez, Esq.
Elisabeth E. Martini, Esq.
Seventh Floor Camelback Esplanade II
2525 East Camelback Road
Phoenix, Arizona 85016-4237
***Attorneys for Plaintiffs***