**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Adams Craig Acquisitions LLC, et al., | No. CV-18-00817-PHX-GMS |
| Plaintiffs, | **ORDER** |
| v. | |
| Defendant Atain Specialty Insurance Company, et al., | |
| Defendants. | |

Pending before the Court are the Motion for (Partial) Summary Judgment of Plaintiffs Adams Craig Acquisitions, LLC ("ACA") and Adams Craig Technologies, LLC ("ACT") (Doc. 55.) and the (Cross) Motion for Summary Judgment of Defendants Atain Specialty Insurance Co. ("Defendant Atain") and Dynamic Claims Services, Inc. ("Defendant Dynamic") (Doc. 53.). For the following reasons Plaintiffs' Motion is denied, and Defendants' Motions are granted in part and denied in part.

**BACKGROUND**

This case arises out of an insurance contract. Plaintiff ACA purchased a Comprehensive General Liability Policy ("Policy") from Defendant Atain effective December 17, 2015 through December 17, 2016.

In March 2014, Plaintiffs[1] contracted to remodel a residence in Paradise Valley. The remodel was completed in June 2016. In August 2016, the homeowners notified Plaintiffs of a water leak in the garage. It was eventually determined that roof caps, incorrectly

---

[1] ACT was doing business under ACA's trade name. Both entities are managed by the same principal, Mr. Stephen Adams.

installed by one of Plaintiffs' subcontractors, JLC Roofing, Inc. ("JLC"), were the cause of the leak. The Arizona Registrar of Contractors ("ROC") ordered JLC to repair the defective roof caps. JLC complied with the ROC's order. However, JLC refused to repair and denied responsibility for any damage caused by water seepage under the walk deck above the garage. JLC's insurance carrier also refused to participate in resolving the issue. On February 24, 2017, Plaintiffs decided to make a claim under their policy with Atain. Atain promptly hired Defendant Dynamic as an independent adjuster to review the site.

Defendant Dynamic's representative Mr. Marvin Heinl met with Plaintiffs' principal, Mr. Adams, to inspect the residence. After the inspection, Mr. Heinl told Mr. Adams that he had a duty to "mitigate his damages." (Doc. 56-5 at 18.) Mr. Heinl then issued the inspection report ("Dynamic Report") on March 21, 2017. The Dynamic Report acknowledged that "damages to the drywall in the garage [are] directly related to the deficiency in the roof cap installation on the second level roof." (Doc. 56-6 at 9.) The Dynamic Report further noted that Mr. Adams claimed the deficient roof caps also resulted in damage to the walk deck above the garage. The Dynamic Report did not opine on the cause of the damage to the walk deck, but instead suggested that a third-party expert be hired to evaluate Mr. Adams's assertion. However, the Dynamic Report did explain that much of the evidence "of the waterproof barriers and deck application, and the sealing with the parapets and perimeter wall of the home" had been lost. (Doc. 56-6 at 9.) Defendant Atain did not conduct any further investigation.

There is some dispute as to the comprehensiveness of the information Plaintiffs provided to Defendant Atain. All parties agree, however, that Defendant Atain sent requests for information on April 4, 2017, May 11, 2017, and June 9, 2017. On July 21, 2017, Defendant Atain issued its initial coverage analysis. Plaintiffs submitted additional information in September 2017. Defendant Atain issued its final coverage determination in a letter on October 11, 2017 and remitted payment for the covered claims. Plaintiffs requested reimbursement for $120,008.37, and Defendant Atain paid Plaintiffs $28,362.97.

Defendant Atain determined there were three categories to ACA's Claim: (1) repairs

and costs related to the incorrectly installed roof caps—the source of the water intrusion; (2) repairs and costs to the drywall and insulation resulting from the water intrusion; and (3) repairs and replacement of the walk deck above the garage. Defendant Atain agreed to pay the costs associated with the repairs of the resulting damage to the drywall and insulation but refused to pay the costs associated with repairing the roof caps and the walk deck. Defendant Atain asserted that the denied costs were not covered under the Policy because they were incurred to repair "defective work" rather than "resulting damage." Defendant Atain also denied Plaintiffs' requests for coverage of their own labor costs in investigating and repairing the leak and other damages.

Plaintiffs brought suit against Defendant Atain in the Superior Court for Maricopa County alleging breach of contract, breach of the covenant of good faith and fair dealing, promissory estoppel, and negligent misrepresentation. Plaintiffs also assert that Defendant Dynamic aided and abetted Defendant Atain in breaching its insurance contract with Plaintiffs. Defendants timely removed the action to this court. Subsequently, Plaintiffs moved for summary judgment on the breach of contract and bad faith claims, while Defendants cross-moved for summary judgment on all the asserted claims.

## DISCUSSION

**I.  Legal Standard**

The purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"[A] party seeking summary judgment always bears the initial responsibility of

informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Parties opposing summary judgment are required to "cit[e] to particular parts of materials in the record" establishing a genuine dispute or "show[ ] that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). A district court has no independent duty "to scour the record in search of a genuine issue of triable fact[.]" *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). "[W]hen simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." *Fair Housing Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001).

**II.  Analysis**

    **A.  Breach of Contract**

The Policy provides, "[w]e will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies." (Doc. 54-1 at 57.) The parties' dispute the scope and application of this provision.

        **1.  Resulting Damages**

Under the Policy, property damage must be caused by an "occurrence." Faulty workmanship is not an occurrence in Arizona. As a result, the cost of repairing defective work, including the "get to" costs required to make repairs to defective work, are not covered "property damage." *Desert Mountain Props. Ltd. P'ship v. Liberty Mut. Fire Ins. Co.*, 225 Ariz. 194, 214–15, 236 P.3d 421, 441–42 (Ariz. Ct. App. 2010). However, damage that results from defective work ("resulting damage") is an occurrence in Arizona. *Lennar Corp. v. Auto-Owners Ins. Co.*, 214 Ariz. 255, 262, 151 P.3d 538, 545 (Ct. App. 2007). Thus, the costs of repairing resulting damage, including the "get to" costs, are covered property damage. *Desert Mountain*, 225 Ariz. at 214–15, 236 P.3d at 441–42.

Here, the parties agree that the roof caps constitute defective work. Thus, any expenses incurred getting to or repairing the roof caps are not covered under the Policy. Conversely, any expenses incurred getting to or repairing damage caused by the faulty roof caps are covered under the Policy. The parties have highlighted two claims where this classification is determinative: (1) the removal and replacement of the wall siding below the roof caps; and (2) the removal and replacement of the walk deck materials.[2]

*The wall siding*: Plaintiffs contend that the wall siding had to be removed to get to water damage which was caused by the leak originating from the faulty roof caps. Defendant Atain asserts that the siding was instead removed to get to the defective roof caps themselves. Neither party points to evidence in the record to support their position beyond their respective Statement of Facts in which each party provides a conclusory statement as to the reason for the removal. Without more, a reasonable juror could conclude in favor of either party. Because there is a genuine dispute as to why the siding was removed, summary judgment as to this issue is denied to both Plaintiffs and Defendants.

*The walk deck*: Plaintiffs assert that the damage to the walk deck was caused by the deficient roof caps. Specifically, Mr. Adams explained in his declaration that "the water was running behind the siding and underneath the walk deck tile, damaging the tile as a result of the water leak." (Doc. 63-1 at 3.) Defendant Atain contends that Plaintiffs failed to provide any evidence, beyond Mr. Adams's own statement, to support Mr. Adams's theory. Instead, Firesky Coating LLC ("Firesky"), an entity retained by Plaintiffs, submitted a letter to Defendant Atain's adjuster stating that "the [walk] deck was improperly installed, inadequate to hold decking and otherwise incorrect and not completed in a workmanlike manner." (Doc. 54-3 at 97.) Moreover, none of the other entities hired by Plaintiffs to source the leak or evaluate the damage opined on the cause of the damage to the walk deck. Based on the Firesky letter and the lack of controverting evidence, Defendant Atain concluded that the walk deck was replaced to repair Plaintiffs' defective

---

[2] Defendant Atain also denied Plaintiffs' claim for the costs incurred reinstalling the walk deck hand rails. In their briefing, Plaintiffs seem to include this expense with the general expenses incurred in repairing and replacing the walk deck "materials." Thus, the analysis provided for the walk deck includes consideration of the walk deck hand rails.

work. However, the Firesky letter does not preclude the possibility that the walk deck was also damaged as a result of the faulty roof caps. Neither party has produced sufficient evidence to preclude an issue of fact as to the cause of the walk deck's damage. Summary judgment on this issue is denied to both Plaintiffs and Defendants.

### 2. Plaintiffs' Labor Costs

The parties also dispute whether the Policy requires Defendant Atain to reimburse Plaintiffs for their own time spent addressing the damage to the residence. Defendants assert that the Policy language— "legally obligated to pay as damages"—suggests that the Policy is limited to covering only those costs that the insured owes to third parties.

In Arizona, an insurance policy is interpreted "according to its plain and ordinary meaning, examining it from the viewpoint of an individual untrained in law or business." *Desert Mountain*, 225 Ariz. at 200, 236 P.3d at 427. The ordinary meaning of a "legal obligation to pay" is "any obligation enforceable by law, including for example, an obligation created by statute, contract or the common law." *Id.* at 428. The ordinary meaning of "damages" is the "estimated money equivalent for detriment or injury sustained." *Id.* at 429. The relevant injury or detriment within the context of the Policy is that of the homeowners, not the insured. *Id.* at 202–03. (holding that the expenses the insured incurred repairing resulting property damage the insured was contractually obligated to repair constituted the "estimated money equivalent for detriment or injury sustained" *by the homeowners*, and were covered under the Policy) (emphasis added). Consequently, to the extent the insured has a legal obligation to make repairs, any expenses incurred by the insured to repair resulting damage are covered under the Policy. It is immaterial whether the insured made the repairs itself or contracted with a third party.

In the instant case, the parties do not dispute that Plaintiffs were contractually liable for the correction of any defects that resulted from their construction. To the extent Plaintiffs' requested labor costs were incurred repairing resulting damage, they are covered under the Policy. However, there is a genuine dispute as to which damages addressed at the residence constitute resulting damages. As a result, there is also a genuine dispute as to

whether Plaintiffs' labor costs were incurred repairing covered resulting damage or uncovered defective work. Because neither party has produced sufficient evidence to preclude a reasonable juror from returning a verdict for the nonmoving party, summary judgment on this issue is denied to both Plaintiffs and Defendants.

### 3. Prejudice

Defendant Atain asserts that the coverage determination is immaterial because Plaintiff ACA waived its rights to reimbursement under the Policy by failing to provide Defendant Atain with timely notice of the occurrence. The Policy requires Plaintiffs notify Defendant Atain "as soon as practicable." (Doc. 54-1 at 67.) In Arizona, however, "an insured's failure to give notice does not relieve an insurer of its contractual liability . . . unless the insurer can demonstrate prejudice due to the delay." *Liberty Mut. Fire Ins. Co. v. Mandile*, 192 Ariz. 216, 223, 963 P.2d 295, 302 (Ct. App. 1997). To show prejudice the insurer must demonstrate that the insured's actions "had an actual and substantial adverse [effect]" on the insurer's ability to adjust the claim. *Desert Mountain*, 225 Ariz. at 207, 236 P.3d at 434 (alteration in original). Prejudice must be based on more than delay alone. *Id.* (citing *Globe Indem. Co. v. Blomfield*, 115 Ariz. 5, 7, 562 P.2d 1372, 1374 (Ct. App. 1977)). Moreover, vague assertions of what the insurer could have done had it been notified sooner are also insufficient. *Blomfield*, 115 Ariz. at 7, 562 P.2d at 1374.

In *Blomfield*, to support its claim of prejudice, the insurer produced statements by its claims manager proclaiming that if the company had known of the incident sooner it may have been able to handle the incident more directly or settle the suit earlier. *Id.* The Arizona Court of Appeals explained, "[t]hese vague statements do not present any evidence of prejudice," and upheld the trial court's grant of summary judgment. *Id.*

Defendant Atain claims prejudice in the following respects: (1) it "lost the right to preserve and protect the property from damage caused by additional rainstorms"; (2) it "was effectively precluded from having a professional evaluate Mr. Adam's unsupported claim that the roof cap leak caused damage to the tile on the Walk Deck" because most of the evidence had been lost before Atain was notified of the occurrence; and (3) it was

deprived of the opportunity to select someone other than the insured to manage the correction of the defective work. (Doc. 53 at 12, Doc. 64 at 8.) As an initial matter, these claims of prejudice go beyond the vague assertions deemed insufficient in *Blomfield* and are not insufficient as a matter of law.

Plaintiffs argue that Defendant Atain's claim of prejudice is "disingenuous" because Defendant Atain failed to take the steps it claims it would have taken even after it received notice. Namely, that Defendant Atain failed to hire an expert to investigate the extent of the damage caused by the roof caps and failed to take any steps to protect the site from future damage. However, it is undisputed that relevant evidence was lost and the residence was further damaged due to rainstorms before Defendant Atain was able to inspect the property. Thus, regardless of how Defendant Atain handled the claim after notice was received, a reasonable juror could conclude that Defendant Atain's ability to adjust the claim was substantially adversely effected by Plaintiffs' conduct.

Conversely, Defendant Atain has not produced any evidence that a more complete investigation would have been conducted or feasible if it had a received prior notice. *Liberty Mut. Fire Ins. Co.*, 192 Ariz. at 224, 963 P.2d at 303 (explaining that the insurer failed to make a sufficient showing of prejudice to warrant summary judgment when it failed to provide evidence that a more complete investigation would have been undertaken or feasible had the insurer received notice of the incident earlier). Without such a showing, a reasonable juror could conclude that Defendant Atain was not prejudiced by Plaintiffs' conduct. Because neither party has produced sufficient evidence to preclude a reasonable juror from returning a verdict for the nonmoving party, summary judgment on this issue is denied to both Plaintiffs and Defendants.

**B.    Breach of the Covenant of Good Faith and Fair Dealing**

    **1.    Bad Faith**

Plaintiffs also argue that Defendant Atain acted in bad faith. "An insured alleging breach of the duty of good faith must show both that the insurer acted unreasonably in investigating, evaluating or processing the claim and that it either knew or was conscious

of the fact that it acted unreasonably." *Desert Mountain*, 225 Ariz. at 215, 236 P.3d at 442. The test is both objective and subjective. *Nardelli v. Metro. Grp. Prop. & Cas. Ins. Co.,* 230 Ariz. 592, 597–98, 277 P.3d 789, 794–95 (Ct. App. 2012). "If the insured fails to designate evidence from which a jury could reasonably return a verdict on both prongs, then summary judgment is proper." *Addie v. Am. Family Mut. Ins. Co.*, No. CV–11–2534–PHX–SMM, 2014 WL 2624922, at *4 (citing *Lasma Corp. v. Monarch Ins. Co. of Ohio*, 159 Ariz. 59, 64, 764 P.2d 1118, 1123 (1988)). With respect to the objective prong, an insurer's failure to pay a claim is not unreasonable when the claim's validity is "fairly debatable." *Rawlings v. Apodaca,* 151 Ariz. 149, 156, 726 P.2d 565, 572 (1986). The subjective prong requires some "consciously unreasonable conduct." *Addie*, 2014 WL 2624922 at *5 (quoting *Trus Joist Corp. v. Safeco Ins. Co. of Am.,* 153 Ariz. 95, 104, 735 P.2d 125, 134 (App.1986)). An "insurer is conscious of its unreasonable conduct if it either knew its actions lacked a reasonable basis or acted with sufficiently reckless disregard as to whether it had a reasonable basis for its conduct." *Id.* (citing *Nardelli*, 230 Ariz. at 598, 277 P.3d at 795).

In the instant case, Defendant's decision not to retain an expert to evaluate the extent of the damage caused by the faulty roof caps creates a genuine dispute concerning the reasonableness of Defendant Atain's conduct. Defendant Atain contends this decision was based on the Dynamic Report's notation that most of the evidence needed to evaluate the damage was missing. The Dynamic Report, however, also suggested that Defendant Atain hire an expert to evaluate the claim. Arguably, the suggestion to hire an expert implies that the extent of the damage could still be evaluated despite the missing the evidence. Consequently, a juror could reasonably conclude that Defendant Atain's investigation was unreasonably inadequate notwithstanding the missing evidence. However, a reasonable juror could also conclude the converse. Plaintiff's claim for breach of the covenant of good faith and fair dealing survives summary judgment on these grounds. Summary judgment on this issue is denied to both Plaintiffs and Defendants.

### 2. Punitive Damages

Plaintiffs have not produced sufficient evidence to survive summary judgment with respect to their request for punitive damages. In Arizona, to recover punitive damages Plaintiffs must provide "clear and convincing evidence that the insurer engaged in 'aggravated and outrageous conduct' with an 'evil mind.'" *Addie*, 2014 WL 2624922 at *5 (quoting *Linthicum v. Nationwide Life Ins. Co.*, 150 Ariz. 326, 332, 723 P.2d 675, 681 (1986)). This requisite standard may be "evidenced by a showing that the defendant was consciously aware of the needs and rights of the insured and nevertheless, ignored its obligations." *Linthicum*, 150 Ariz. at 332, 723 P.2d at 681. The standard for punitive damages is notably more demanding than the standard for tort damages. *Rawlings v. Apodaca*, 151 Ariz. 149, 162, 726 P.2d 565, 578 (1986). In *Rawlings*, the Arizona Supreme Court explained that while tort damages may only require a showing of indifference, punitive damages require plaintiff to show an intent to harm. *Id.*

Plaintiffs' request for punitive damages is based on the same grounds advanced as the basis for their bad faith claim. While there may be a genuine dispute as to whether Defendant Atain's decision not to further investigate the extent of the damage caused by the roof caps was unreasonable, Plaintiffs have not pointed to any evidence in the record to suggest this decision was made with an evil mind. *Rawlings*, 151 Ariz. at 162, 726 P.2d at 578 ("Indifference to facts or failure to investigate are sufficient to establish the tort of bad faith but may not rise to the level required by the punitive damage rule."); *see Haney v. ACE Am. Ins. Co.*, No. CV–13–02429–PHX–DGC, 2015 WL 3750777, at *4 (D. Ariz. June 16, 2015) (noting that Arizona caselaw establishes "that punitive damages are not merited where an insurer merely takes a groundless position and fails to investigate the adequacy of the position"). Defendants' Motion for Summary Judgment on the issue of Punitive Damages is granted. Plaintiffs' Motion is denied.

### C. Promissory Estoppel

Plaintiffs contend that Defendant Atain's agent, Mr. Heinl, directed Plaintiffs to "mitigate damages." Plaintiffs assert that it proceeded with repairs to the property in

reliance on this directive. Defendant Atain explains that Plaintiffs were always under a duty to mitigate damages. Thus, Mr. Heinl's recommendation was not a promise or representation that can serve as the basis for promissory estoppel.

"To prove promissory estoppel, plaintiff must show that Defendant made a promise and should have reasonably foreseen that plaintiff would rely on that promise, and plaintiff must also show that he actually relied on the promise to his detriment." *Higginbottom v. State*, 203 Ariz. 139, 144, 51 P.3d 972, 977 (Ct. App. 2002). Here, it is undisputed that Mr. Heinl told Mr. Adams, at the conclusion of the inspection, that he had a duty to "mitigate his damages." Notably, Defendant Atain does not contest Plaintiffs' assertion that Mr. Heinl was Defendant Atain's agent. Thus, a juror could reasonably conclude that Mr. Heinl's direction to Mr. Adams was a direction by Defendant Atain to proceed with repairs. Defendants' arguments principally rely on the content of the phrase and fail to address how Plaintiffs may have interpreted the directive under the applicable context. Because Defendants have not produced sufficient evidence to preclude a reasonable juror from returning a verdict in favor of the non-moving party, Defendants' Motion for Summary Judgment on this claim is denied.

### D. Negligent Misrepresentation

Plaintiffs' basis for their claim of negligent misrepresentation is seemingly based on Defendants' failure to disclose "all relevant Policy provisions that could affect coverage for Plaintiffs' damages." (Doc. 1-5 at 11.) In Arizona, a claim for negligent misrepresentation can only be based on a failure to disclose information, if the non-disclosing party was required to provide the desired information. *Van Buren v. Pima Community College Dist. Bd.*, 113 Ariz. 85, 87, 546 P.2d 821, 823 (1976) ("A claim for relief for negligent misrepresentation is one governed by the principles of the law of negligence.").

Plaintiffs have not cited any authority that suggests Defendants were required to inform Plaintiffs of "all relevant Policy provisions." The Court finds support to the contrary. *See Certain Underwriters at Lloyds, London v. Payson Premier, LLC*, No. 2 CA–

CV 2008–0169, 2009 WL 1156705, at *3 (Ariz. Ct. App. Apr. 29, 2009); ("We find no authority suggesting an insurer must explain all possible implications of unambiguous policy terms."); *AAA Full Transportation System v. Patterson*, No. 1 CA–CV 09–0204, 2010 WL 1640976, at *2 (Ariz. Ct. App. Apr. 22, 2010) (explaining that the trial court did not err in denying the insured's motion for new trial where the evidence at trial showed the insurer's agent made no representation as to whether a claim would be covered and the insured failed to cite any authority for the proposition that the insured had a duty to inform the insured whether its claim would be covered). Plaintiffs have not provided any evidence on which a reasonable juror could conclude that Defendants were obliged to inform them of "all relevant Policy provisions." Failure to disclose in such an instance cannot be characterized as negligent misrepresentation. Defendants are entitled to summary judgment on this claim.

### E. Aiding and Abetting

Plaintiffs assert that Defendant Dynamic assisted or encouraged Defendant Atain in unreasonably denying coverage of Plaintiffs' claims. To prove aiding and abetting tortious conduct, the plaintiff must prove: "(1) the primary tortfeasor must commit a tort that causes injury to the plaintiff; (2) the defendant must know that the primary tortfeasor's conduct constitutes a breach of duty; and (3) the defendant must substantially assist or encourage the primary tortfeasor in the achievement of the breach." *Wells Fargo Bank v. Ariz. Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 485, 38 P.3d 12, 23 (2002).

Plaintiffs argue that Dynamic's Report, the basis on which Defendant Atain denied many of Plaintiffs' claims, constitutes substantial assistance or encouragement of Defendant Atain's allegedly tortious conduct. However, Plaintiffs' assertions are misguided. Defendant Dynamic's involvement with Plaintiffs' claim was limited to visiting the site and issuing the report. There is no evidence in the record to suggest that Dynamic knew of, or encouraged, any future breaches of duty by Defendant Atain with respect to Plaintiffs' claims. Dynamic's undisputed involvement in this case hardly rises to

the level necessary to properly allege a claim of aiding and abetting. Defendants are entitled to summary judgment on this claim.

## CONCLUSION

Plaintiffs' claims for breach of contract, bad faith, and promissory estoppel hinge on factual disputes that must be determined by a finder of fact. Plaintiffs, however, not only failed to illustrate a genuine dispute, but rather failed to allege necessary facts to substantiate their claims of negligent misrepresentation and aiding and abetting. The same can be said with respect to Plaintiffs' request for punitive damages.

**IT IS THERFORE ORDERED** that the Motion for (Partial) Summary Judgment of Plaintiffs (Doc. 55.) is **DENIED**, and the (Cross) Motion for Summary Judgment of Defendants (Doc. 53.) is **GRANTED IN PART AND DENIED IN PART**.

Dated this 4th day of September, 2019.

_____
G. Murray Snow
Chief United States District Judge